**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

HELMERICH & PAYNE )
INTERNATIONAL DRILLING CO., )
                                             )
       Plaintiff, )
                                             ) Case No. 17-CV-358-GKF-FHM
v. )
                                             )
SCHLUMBERGER TECHNOLOGY )
CORPORATION, )
       Defendant. )

**OPINION AND ORDER**

This matter comes before the court on the Motion of Defendant Schlumberger Technology Corporation to Dismiss Counts 3 and 4 of the First Amended Complaint [Doc. #66]. For the reasons discussed below, the motion is granted.

**I.    Background**

This matter relates to a License Agreement between H&P and Omron Oilfield & Marine, Inc., concerning certain software developed for use in the oil industry. The License Agreement granted H&P a right to use and modify the software in the conduct of H&P's customary rig leasing service and business. *See generally* [Doc. #64-1]. Additionally, section 3 of the License Agreement included a non-solicitation provision, which stated:

> [H&P] and its Affiliates will not actively solicit any former (i.e., within two (2) years of their departure from [Omron] or its Affiliates) or current employee or individual contractor of [Omron] or its Affiliates or their predecessors for purposes of assisting [H&P] or its Affiliates in any manner in connection with developing hardware or software that competes with the Software or Licensor Hardware. Notwithstanding the foregoing, [H&P] and its Affiliates shall not be precluded from (i) hiring an employee who independently approaches them, or (ii) conducting general recruiting activities, such as participation in job fairs or publishing advertisements in publications or on Web sites for general circulation.

[Doc. #64-1, p. 5] ("Non-Solicitation Provision").  Omron was acquired by Schlumberger in June 2016.

H&P claims that, on June 16, 2017, Schlumberger wrongfully revoked the License Agreement based on H&P's alleged active solicitation of Schlumberger employees Fergus Hopwood and Philip Martin to develop competitive software.  [Doc #64, ¶ 20].   As a result, on June 22, 2017, H&P initiated litigation in this court asserting four counts: (1) breach of contract; (2) declaratory judgment that the Non-Solicitation Provision, as interpreted by Schlumberger, violates Oklahoma's restraint of trade statute (15 O.S. § 217), the Sherman Act (specifically, 15 U.S.C. § 1), and the Oklahoma Antitrust Reform Act (specifically 79 O.S. § 203(A)); (3) violation of § 1 of the Sherman Act; and (4) violation of § 203(A) of the Oklahoma Antitrust Reform Act.  Schlumberger moved to dismiss H&P's Complaint and, on September 8, 2017, this court granted Schlumberger's motion to dismiss in part, denied the motion in part, and granted H&P the opportunity to amend.  [Doc. #60].

On September 22, 2017, H&P filed the Amended Complaint, which asserts four counts: (1) breach of contract; (2) declaratory judgment that H&P has not violated the Non-Solicitation Provision, and that Schlumberger's attempted revocation of the License Agreement is invalid; (3) declaratory judgment that Schlumberger's interpretation of the Non-Solicitation Provision violates § 203(A) of the Oklahoma Antitrust Reform Act; and (4) declaratory judgment that the Non-Solicitation Provision violates Oklahoma's restraint of trade statute.  [Doc. #64].  Schlumberger moves to dismiss count three and count four of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

II. **Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss under Rule

12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). "Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc*., 680 F.3d 1194, 1202 (10th Cir. 2011).

When considering a Rule 12(b)(6) motion to dismiss, the court may consider "not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Id.* at 1201.

### III. Analysis

Schlumberger moves to dismiss count 3 and count 4 of the Amended Complaint. The court will separately consider each count.

#### A. Count 3 – Declaratory Judgment that Schlumberger's Interpretation of the Non-Solicitation Provision of the License Agreement and Revocation Violates 79 O.S. § 203(A)

Section 203(A), title 79 of the Oklahoma statutes, part of the Oklahoma Antitrust Reform Act, declares "[e]very act, agreement, contract, or combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce within [Oklahoma] . . . to be against public policy and illegal." 79 O.S. § 203(A). The Oklahoma Supreme Court has interpreted section 203(A) to

prohibit "only those acts that *unreasonably* restrain trade or commerce."[1] *Fine Airport Parking, Inc. v. City of Tulsa*, 71 P.3d 5, 10 (Okla. 2003) (emphasis added).

"There are 'two main analytical approaches for determining whether a defendant's conduct unreasonably restrains trade: the per se rule and the rule of reason.'" *Buccaneer Energy (USA), Inc. v. Gunnison Energy Corp.,* 846 F.3d 1297, 1306 (10th Cir. 2017) (quoting *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1203 (10th Cir. 2006)).[2] Courts apply a presumption in favor of the rule of reason. *Id.*

Pursuant to the rule of reason analysis, "only those acts, contracts, agreements or combinations which prejudice the public interest by unduly restricting competition, or unduly obstructing the due course of trade, or which injuriously restrain trade, are unlawful." *Beville,* 39 P.3d at 759. *See also Fine Airport Parking, Inc.*, 71 P.3d at 10 ("'The fundamental test of the reasonableness of an action, which, by its nature, restrains trade, is its effect on the public.'") (quoting *Krebsbach v. Henley*, 725 P.2d 852, 858 (Okla. 1986)). Thus, the court must inquire as to "the extent to which challenged conduct harms competition and . . . then determine whether any such harm is nonetheless justified by countervailing procompetitive benefits." *Buccaneer Energy (USA), Inc.,* 846 F.3d at 1306.

---

[1] Unlike the Sherman Act, the federal anti-trust statute, which requires evidence of a conspiracy, the Oklahoma Antitrust Reform Act prohibits unilateral acts that unreasonably restrain trade. *See Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1091 (10th Cir. 2006) (explaining distinction).

[2] The Oklahoma Supreme Court looked to the interpretation of federal anti-trust statutes to determine what constitutes an unreasonable restraint of trade under 79 O.S. § 203. *See Fine Airport Parking, Inc.*, 71 P.3d at 10; *Beville v. Curry*, 39 P.3d 754, 759 (Okla. 2001) ("The provisions of this state's antitrust statutes are similar to federal legislation, and interpretation of federal antitrust legislation provides assistance in interpreting the provisions of the Oklahoma statutes.").

The *per se* analysis, on the other hand, applies only to those "'agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.'" *Id.* (quoting *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985)). *See also Fine Airport Parking, Inc.*, 71 P.3d at 10 ("Restraint of trade that has a pernicious effect on competition is conclusively presumed unreasonable and a per se violation of the antitrust statutes."). That is, "[p]er se violations are restricted to those restraints 'that would *always or almost always* tend to restrict competition and decrease output,'" *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1119 (10th Cir. 2008) (quoting *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988) (emphasis added) (internal citations omitted)), and, then, "only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877, 886-87 (2007). Thus, courts have applied the *per se* analysis only to "recognized types of behavior with which the courts have substantial experience, including horizontal and vertical price-fixing agreements, group boycotts, market allocation, and certain types of tying agreements." *Mayfield SWD, L.L.C. v. Blevins*, No. CIV-10-0467-HE, 2011 WL 195656, at *5 (W.D. Okla. Jan. 19, 2011).

1. <u>Appropriate Level of Analysis</u>

The parties disagree as to the appropriate level of analysis. Schlumberger argues that the claim must be subject to the rule of reason analysis, [Doc. #66, pp. 6-7], while H&P asserts that the *per se* rule applies to its claim for declaratory judgment as to 79 O.S. § 203A.[3] [Doc. #68, pp.

---

[3] Although H&P argues that either the per se analysis or quick look analysis applies, [Doc. #68, p. 8], H&P's briefing conflates the two analyses. [Doc. #68, pp. 8-12]. However, because the court

8-13]. The court concludes that the rule of reason, rather than the *per se* approach, is applicable to H&P's claim for declaratory relief as to 79 O.S. § 203A for three reasons.

*First*, the conduct alleged in the Amended Complaint does not fall within the categories of behavior to which the *per se* rule has previously been applied because the Amended Complaint does not allege a horizontal or vertical price-fixing agreement in the traditional sense, a group boycott, common market allocation, or tying agreement.

*Second,* the court is not persuaded that unilateral conduct of the type alleged in this matter—specifically, a single entity's interpretation of a non-solicitation provision included in a broader license agreement—would be invalidated in all or almost all instances under the rule of reason. In *Champagne Metals*, the Tenth Circuit declined to apply the *per se* rule to unilateral conduct, stating that it "[was] not prepared to determine that the Oklahoma Supreme Court would hold this unilateral conduct to be a per se violation absent some guidance from that Court." *See Champagne Metals,* 458 F.3d at 1092. H&P has not directed this court to subsequent guidance from the Oklahoma Supreme Court to the contrary. The absence of precedential case law strongly indicates that the conduct alleged in the Amended Complaint is not of the recognized types of behavior with which the courts have substantial experience that would always or almost always tend to restrict competition and decrease output.[4]

---

concludes that the Anti-Solicitation Provision is not a "naked" restraint, the quick look analysis is inapplicable. *See Buccaneer Energy (USA), Inc.,* 846 F.3d at 1311 (indicating that a "quick look" analysis was appropriate "where the conduct at issue amounts to a 'naked' and effective restraint on price or output that carries 'obvious' anticompetitive consequence").

[4]Rather, courts that have considered no-hire agreements entered into upon the sale of a business have applied the rule of reason. *See, e.g., Eichorn v. AT&T Corp.*, 248 F.3d 131, 143-44 (3d Cir. 2001) (collecting cases).

*Third,* the court is not persuaded by the Ninth Circuit cases cited by H&P. H&P primarily relies upon a decision by the United States District Court for the Northern District of California—*United States v. eBay, Inc.*—in support of application of the *per se* rule. [Doc. #68, pp. 8-10 (citing *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030 (N.D. Cal. 2013)]. In *e-Bay, Inc.,* the court considered whether allegations that e-Bay and Intuit, Inc. executed a non-solicitation/no hire agreement pursuant to which both companies agreed that they would not hire from the other company "period" were subject to the *per se* rule or rule of reason. *Id.* at 1038-40. Although the complaint alleged that the non-solicitation agreement was subject to the *per se* rule as a naked restraint on trade, e-Bay argued that the agreement was ancillary to founder and Chairman of the Executive Committee of Intuit Scott Cook's service on the e-Bay board such that the rule of reason applied. *Id.* at 1039 (noting "[w]hen a defendant advances plausible arguments that a practice enhances overall efficiency and makes markets more competitive, per se treatment is inappropriate, and the rule of reason applies" (alteration in original) (quoting *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003)). Thus, the rule determination required the court to decide whether the non-solicitation agreement was ancillary to a legitimate business purpose. *Id.* However, in that case, the court was unable to make that determination on a motion to dismiss, and deferred that decision until the parties provided the court sufficient factual evidence to support their contentions. *Id.* at 1039-40.[5]

---

[5]H&P also cites Philip Areeda and Herbert Hovenkamp's *Antitrust Law* for the proposition that "agreements 'among employers that they will not compete against each other for the services of a particular employee or prospective employee . . . are generally unlawful per se"). *See* [Doc. #68, p. 8 (citing Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 2013b (2013)]. However, the cited proposition relates to reserve clauses in professional sports contracts, a scenario clearly not implicated in the present matter. Thus, the court is not persuaded by H&P's citation to Areeda.

Here, H&P attached the License Agreement to its Complaint and, therefore, the License Agreement may be considered by the court. *See Commonwealth Prop. Advocates, LLC,* 680 F.3d at 1202. Based on the court's review, it is clear that the License Agreement is intended to grant H&P license to use, copy, modify and create derivate works of Omron's software, and define the rights and obligations of each party with respect to such grant. Pursuant to the Non-Solicitation Provision, the parties are precluded from actively soliciting employees of the other "for purposes of assisting Licensee or its Affiliates in any manner in connection with developing hardware or software that competes with the Software or Licensor Hardware." However, the Non-Solicitation Provision does not preclude the parties from hiring employees of the other who independently approach the hiring party or from conducting general recruiting activities. [Doc. #64-1, p. 5 ¶ 3]. Unlike in *e-Bay* where the pleadings included no indication that the non-solicitation agreement was ancillary to anything, the pleadings in this case make clear that the Non-Solicitation Provision is just one part of a larger business transaction between two independent parties.

Further, the Amended Complaint specifically alleges that Omron and H&P *do not compete* in the drilling rig power and control systems market. [Doc. #64, p. 4 ¶ 13]. The Amended Complaint alleges that H&P and Omron (now Schlumberger) are competitors only in the limited market for specialized engineers and, even then, based solely on Schlumberger's alleged unilateral interpretation of the Non-Solicitation Provision. However, pursuant to the terms of the License Agreement, the Non-Solicitation Provision applies only to those employees solicited for the purpose of developing hardware or software that competes with the software that was the subject of the License Agreement, not all specialized engineers. Accordingly, based on the License Agreement before it, the court concludes that the Non-Solicitation Provision is ancillary to

Omron's legitimate grant of a license to use its business asset and, as such, subject to the rule of reason.[6]

          2.          Application of the Rule of Reason

"Rule of reason analysis first asks whether the offending competitor . . . possesses market power in the relevant market where the alleged anticompetitive activity occurs." *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994). *See also Beville*, 39 P.3d at 760 ("Market power is the preliminary threshold inquiry and is often dispositive of antitrust cases."). "The market power query begins with the determination of the relevant market." *SCFC ILC, Inc.*, 36 F.3d at 966. For purposes of the antitrust analysis, the relevant product market "'is composed of products that have reasonable interchangeability for the purposes for which they are produced.'" *Auraria Student Hous. at the Regency, LLC v. Campus Vills. Apartments, LLC*, 843 F.3d 1225, 1244-45 (10th Cir. 2016) (quoting *SCFC ILC, Inc.*, 36 F.3d at 966). "'[T]he geographic market is the narrowest market which is wide enough so that products from adjacent areas cannot compete on substantial parity with those included in the market.'" *Id.* at 1245 (quoting *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1222 (10th Cir. 1986)). A similar analysis applies to employment markets. *See Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 472 (6th Cir. 2005); *Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001). "Failure to allege a legally sufficient market is cause for dismissal of the claim." *Campfield.,* 532 F.3d at 1118. *See also id.* ("'Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . even when all factual

---

[6] Because the court concludes that the Non-Solicitation Provision is ancillary to the broader License Agreement, the court is not persuaded by H&P's reference to the United States Justice Department's Antitrust Guidance for Human Resources Professionals. *See* [Doc. #68, p. 9].

inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.'") (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436-37 (3d Cir. 1997)).

H&P argues that it has sufficiently alleged the relevant market—the labor market for specialized engineers. [Doc. #68, p. 12]. The court is not persuaded. Plaintiff makes no reference, either directly or by implication, to the interchangeability of specialized engineering positions with H&P and specialized engineering positions with Omron (now Schlumberger). Nor does the Amended Complaint include any allegations as to cross-elasticity. Further, the Amended Complaint is silent as to the geographic market, and includes no facts upon which an inference of the relevant geographic market may be based. Even taking the well-pleaded factual allegations of the Amended Complaint as true, H&P does not identify the relevant market with sufficient specificity to state a plausible claim pursuant to 79 O.S. § 203(A). Accordingly, dismissal of Count 3 of the Amended Complaint—declaratory judgment that Schlumberger's interpretation of section 3 of the License Agreement violates 79 O.S. § 203(A)—is warranted.[7]

## B. Count 4 – Declaratory Judgment that the Non-Solicitation Provision violates 15 O.S. § 217

Title 15, section 217 provides: "Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by section 2 of this act, is to that

---

[7] In opposition to the motion to dismiss, H&P alleges that the motion is premature and urges the court to decline to dismiss counts 3 and 4 because Schlumberger's motion to dismiss is premised on disputed facts which will require determination only if Schlumberger prevails on counts 1 and 2. *See* [Doc. #68, pp. 6-7 (citing *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851 (2d Cir. 1985)]. However, the court concludes that the Amended Complaint does not allege a plausible claim for declaratory relief as to violation of 79 O.S. § 203(A), *as pled*, regardless of Schlumberger's interpretation of the Non-Solicitation Provision.

extent void." 15 O.S. § 217 (internal footnote omitted). Section 217 was "adopted for the protection of individuals engaged in lawful professions, trades, and business, and for the benefit of the public." *Neil v. Pa. Life Ins. Co.*, 474 P.2d 961, 963 (Okla. 1970). Although § 217 does not prohibit reasonable restraints on trade, unreasonable restraints will not be enforced. *See Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1170-71 (Okla. 1989). Pursuant to the statute, contracts in unreasonable restraint of trade are void unless the contract falls within a statutory exception. *Id.* at 1171. Whether a non-solicitation provision violates Oklahoma public policy as articulated by section 217 is a question of law for the court to decide. *Scanline Med., L.L.C. v. Brooks,* 259 P.3d 911, 913 (Okla. Civ. App. 2011).

1. Plausible Claim Pursuant to 15 O.S. § 217

Schlumberger argues that the Amended Complaint fails to sufficiently plead that any person or entity, including H&P, is restrained from engaging in any lawful trade, profession, or business in violation of 15 O.S. § 217. [Doc. #66, pp. 14-15]. The court agrees.

The Amended Complaint does not allege that the Non-Solicitation provision restrains H&P from engaging in its trade, profession, or business—drilling. Nor does the Amended Complaint allege that the Non-Solicitation Provision prohibits the employment of an individual as a specialized engineer with any other company in the oil and gas labor market in the field of engineering as a whole. Further, the Amended Complaint does not allege that Schlumberger's interpretation of the License Agreement would result in reduced compensation, business or working conditions in the overall "trade, business or profession," or at any other employer for that matter. Rather, the Amended Complaint's averments relate only to competition to attract employees amongst two companies—H&P and Schlumberger. *See* [Doc. #68, p. 18 (citing Doc. #64, ¶ 53)]. The court is not persuaded that the Amended Complaint's lone averment, without

any factual support, that the non-solicitation provisions limits employees' abilities to secure better compensation, benefits, and working conditions states a plausible claim for restraint in the exercise of a "trade, business, or profession."

Nor does the License Agreement bear out H&P's argument. The Non-Solicitation Provision relates only to solicitation by H&P of former or current employees of Omron (now Schlumberger) for purposes of assisting H&P "in any manner in connection with" the development of competing software, and specifically excepts from the prohibition employees who independently approach H&P. Oklahoma statutes include an exception from section 217's prohibition for non-solicitation agreements pursuant to which an employee is prohibited from soliciting employees of one business to becomes employees of another. 15 O.S. § 219B. *See also Pre-Paid Legal Servs., Inc. v. Cahill*, 924 F. Supp. 2d 1281, 1289 (E.D. Okla. 2013) (agreement that did not prevent person from exercising lawful profession was not a restraint of trade). *Compare Cardiovascular Surgical Specialists, Corp. v. Mammana*, 61 P.3d 210, 213 (Okla. 2002) ("[P]rovisions by which an employer sought to go beyond a prohibition on active solicitation and thus prevent fair competition have been declared void."). In light of the clear Oklahoma public policy expressed in the statutory exception, the court is not persuaded that the Amended Complaint's allegations state a plausible claim for violation of § 217.

2. Application of the Rule of Reason

Even if H&P alleged a plausible restraint of trade in violation of § 217, count 4 would fail by reason of application of the rule of reason. As previously mentioned, § 217 prohibits only unreasonable restraints of trade. The Oklahoma Supreme Court has held that the rule of reason applies to test the reasonableness of restraints under § 217. *Bayly, Martin & Fay, Inc.*, 780 P.2d at 1171. *See also Inergy Propane, LLC v. Lundy*, 219 P.3d 547, 557 (Okla. Civ. App. 2008)

(concluding that enactment of § 219A statutory exception to § 217 "does not . . . require abandonment of the rule of reason analysis required by previously established case law").[8]

As previously discussed, the rule of reason begins with identification of the relevant market, and "[f]ailure to allege a legally sufficient market is cause for dismissal of the claim."

---

[8] H&P argues that a full rule of reason analysis is not required by Oklahoma law. *See* [Doc. #68, pp. 14-16]. The court is not persuaded. As recognized in *Bayley*, the Oklahoma Supreme Court expressly adopted the rule of reason with regard to § 217. H&P does not cite to, nor has the court identified, any subsequent decision by that court renouncing the rule of reason. Rather, H&P cites to the Oklahoma Supreme Court's decision in *Howard v. Nitro-Lift Techs., L.L.C.*, in which the court voided a contract provision as a matter of law without performing a complete rule of reason analysis. *See* [Doc. #68, p. 14 (citing *Howard v. Nitro-Lift Techs., L.L.C.*, 273 P.3d 20 (Okla. 2012), *vacated on other grounds, Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17 (2012))]. In *Howard*, the court did conclude that a contractual provision was void as a matter of law based on application of § 219A. However, *Howard* does not compel this court to conclude that the Oklahoma Supreme Court has renounced the rule of reason. Although not binding on this court, the court is persuaded by the analysis of the Oklahoma Court of Civil Appeals in *Inergy Propane*, which reasoned:

> Clearly, section 219A is intended to create a third statutory exception to the general prohibition against contracts in restraint of trade set forth in section 217. That does not, however, require abandonment of the rule of reason analysis required by previously established case law. Section 219A was not enacted in a vacuum. Nor does the language of the statute evidence any legislative intent to supplant the existing and extensive case law interpreting section 217. Those cases and the analytical approach developed therein provide the context within which to resolve the issues not specifically addressed by the language of section 219A. What the statute does eliminate is the need for part of the rule of reason analysis. In section 219A the Legislature has determined that the pro-competitive benefits of an agreement between an employer and an employee preventing the employee from "directly solicit[ing] the sale of goods, services or a combination of goods and services from the established customers of the former employer" after termination of the employment outweigh the anti-competitive effects of that agreement. Beyond that, the Legislature left the parties free to negotiate the terms of post-employment restraints within the constraints of established legal principles.

*Inergy Propane, LLC*, 219 P.3d at 557 (alterations in original). Thus, *Howard* is properly construed as a determination that the pro-competitive benefits of the provision in that case did not outweigh the anti-competitive effects by operation of statute, rendering the remainder of the rule of reason analysis moot.

- 13 -

*Campfield,* 532 F.3d at 1118. As discussed above with regard to count 3, H&P does not identify the relevant market with sufficient specificity to state a plausible claim pursuant to 79 O.S. § 203(A). Thus, count 4 is dismissed.[9]

## IV. Conclusion

WHEREFORE, the Motion to Dismiss Counts 3 and 4 of the First Amended Complaint is granted.

DATED this 26th day of December, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[9] Because the court concludes that neither count 3 nor count 4 states a viable claim for relief for the reasons discussed herein, the court does not reach Schlumberger's argument regarding whether H&P sufficiently alleged "antitrust injury."